JMR

Melinda Scott
PO BOX 1133-20147PMB87
Richmond, VA 23218
January 10, 2019

Clerk
US Court of Appeals, 4th Circuit
1100 East Main St., 5th floor
Richmond, VA 23219

>            RE:     Appellant Brief
>                    Case No. 19-1011

To the Clerk:

>    Please find enclosed:

1. 4 copies of the Appellant Brief in accordance with Rule 31b
2. Proof of service[1] upon the Defendants

>    In accordance with Rule 24(a)(3), the Plaintiff files this appeal in continuation of her former permission to proceed *in forma pauperis*.

>            Thank you,

>            Melinda Scott, *pro-se*
>            mscottw@gmu.edu

2019 JAN 17 PM 2:10
U.S. COURT OF APPEALS
FOURTH CIRCUIT
RECEIVED

---

[1] 1 copies each of the Brief accordance with Rule 31b; listed in the Certificate of Service

# TABLE OF CONTENTS

Table of Authorities.............................................................. 2

Jurisdictional Statement........................................................ 3

Concise Statement of Facts.................................................... 4

Issues.................................................................................. 8

Summary of Argument......................................................... 12

Argument............................................................................ 13

Relief sought....................................................................... 18

Appendix............................................................................. 19

Signature Page.................................................................... 21

Certifiate of Service............................................................ 22

*Appellant Brief Scott v Carlson et al*
Case No. 19-1011

Table of Authorities

1. *Bloom v. Yaretsky, 457 US 991 (1982)*[1]
2. *California v. Ciraolo 476 US 207 (1985)*[2]
3. *DeBauche v. Trani 191 F. 3d 499 (1999)*[3]
4. *Edmonson v. Leesville Concrete Co, Inc. 500 US 614 (1991)*[4]
5. Fourth Amendment, Bill of Rights[5]
6. *Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F. 3d 337 (2000)*[6]
7. *Horton v. California 496 US 128, 110 (1990)*[7]
8. *Katz v United States 389 U.S. 347, 350* (1967)[8]
9. *Kyllo v United States 533 US 27, 121 (2001)*[9]
10. *Rawlings v Kentucky 448 US 98, 100 (1980)*[10]
11. The Privacy Act of 1974[11]

---

[1] "Argument" section
[2] "Argument" section
[3] "Argument" section
[4] "Argument" section
[5] "Issues" section, "Summary" section, "Argument" section
[6] "Argument" section
[7] "Argument" section
[8] "Issues" section, "Argument" section
[9] "Argument" section
[10] "Argument" section
[11] "Issues" section, "Summary" section, "Argument" section

*Appellant Brief Scott v Carlson et al*
Case No. 19-1011

**Jurisdictional Statement**

This court has jurisdiction to hear this case because of diversity of citizenship. Plaintiff Scott is a resident of Virginia. Defendant Carlson is a resident of New York. Defendant Moon is a resident of Florida. Both of the computers controlled by Defendant Carlson and Defendant Moon were controlled outside of the State of Virginia, each respectively to their resident state.

The Appeal, based on an Order and Dismissal dated December 11, 2018, has been filed within the thirty (30) day limit.

**BRIEF IN MEMORANDUM**

The Plaintiff requests this Honorable Court to consider the following issues with regard to the Notice of Appeal in the above named case. The final Order disposed of all claims from the original Complaint. The part of the dismissal being appealed is whether or not Plaintiff Scott has stated a constitutional invasion of privacy claim based on her Fourth Amendment rights (against Defendants Andrew Carlson and Joshua Moon) (pg.5 of Opinion).

## Concise Statement of Facts of the case

a. The Complaint: A Civil Action

1. Plaintiff filed a civil suit against three defendants for Defamation, Publication of Private Information and Fourth Amendment violations.

b. Defendants

2. Defendants listed in the Complaint, together with their residences[12], were Andrew Carlson (New York defendant), Joshua Moon (Florida defendant) and Sherrod DeGrippo (Michigan defendant)

c. Fourth Amendment claims

3. Plaintiff's Complaint included a claim of violation of Fourth Amendment rights against Defendants Carlson and Moon (¶d and ¶g; "Cause of Action I)

D. Defendant Carlson (New York resident)

4. Plaintiff alleged that Defendant Carlson, using a social media site called "YouTube", used information from a Protective Order[13] to publicly release the

---

[12] Listed in the "Diversity of Citizenship" section

*Appellant Brief Scott v Carlson et al*
Case No. 19-1011

legal names of children she has birthed and which are within her legal custody (children within *her* household) on the Internet for an American[14] national audience and an international audience (¶b(ii))

5. Plaintiff alleged that Defendant Carlson used information from birth certificates[15] and county court orders[16] to publicly release the names of the biological father(s) of her three older children. (¶b(iii), c(vi) & c(vii))

6. Plaintiff alleged that Defendant Carlson published private information from her two marriage licenses and a divorce decree to publicly release who she had been married to by disclosing and announcing the legal names of her former legal spouse and her current legal spouse in connection with her on the internet using a social media site called YouTube for an international audience (¶d(viii))

7. Plaintiff alleged that Defendant Carlson published her full legal name on YouTube (¶bii)

8. Plaintiff alleged that her residential home address was taken by Defendant Carlson from a government database which listed Plaintiff Scott as a business owner seeking government contracts. (¶g(xiv), footnote 3)

9. Plaintiff alleged that a third-party, who is not a defendant in the case, negligently published online the Plaintiff's home address from a government contract database. This publication of her residential home address was intercepted by Defendant Carlson on Google. (¶g(xiv), footnote 3)

10. Plaintiff Scott alleged that Defendant Carlson acted with malice (¶f)


E. Defendant Moon (Florida resident)


11. Plaintiff alleged that Defendant Moon obtained her residential address from Defendant Carlson and posted it on his business website without the Plaintiff's consent. (¶g(xiii) and "Cause of Action I")

---

[13] The Protective Order was issued February 2017 against Defendant Carlson. Defendant Carlson was listed as the Respondent. Plaintiff Scott was the Petitioner.

[14] United States of America

[15] Plaintiff is listed as the biological birth mother on the birth certificates

[16] Court orders regarding custody in which the Plaintiff is listed as the Petitioner

12. Plaintiff alleged that Defendant Moon published her residential address, city of residence and county residence on a website owned by his business for an international audience. ((¶g(xiii))

13. Plaintiff alleged that Defendant Moon published on his business website private information [17] from the Plaintiff's marriage certificate for an international audience. (¶g(xiii) and g(xv) and g(xvi))

14. Plaintiff Scott alleged that Defendant Moon acted with malice (¶i)

## F. Government Databases

15. Plaintiff alleged that retrieving and disclosing the legal names of her children could only be done from government databases and courts not of record. (¶c(vi) and (d)(viii))

16. Plaintiff alleged that her residential home address was taken from a government database. (¶g(xiv), footnote 3)

17. Plaintiff alleged that retrieving and disclosing the legal name of her spouse could only be done from government databases and private papers. (¶g(xv) and g(xvi))

18. Plaintiff alleged that the Defendant Carlson disclosed information from a government database which was a "court not of record" (¶c(vi))

19. Plaintiff alleged that the Defendant Moon disclosed information from a government database which was a "court not of record" (¶g(xvi) and (xx))

## G. Nature of Information

20. Plaintiff alleged that none of the information disclosed and published by Defendant Carlson and Defendant Moon is of legitimate concern to the public. nor is any of the information privileged. (¶Cause of Action I)

---

[17] The Plaintiff's spouse's legal first and last name

*Appellant Brief Scott v Carlson et al*
Case No. 19-1011

## H. Privacy Issues

18. The Plaintiff alleged that her privacy was breached by Defendant Carlson by making knowledge about her former marital relations, her current marital relations and the names of children she has birthed and has custody of international knowledge. (¶d(xiii) and "Cause of Action I")

19. Plaintiff alleged that Defendant Moon's actions are an invasion of her privacy (¶h(xx) and "Cause of Action I")

## I. Cause of Action

20. Plaintiff alleged that by publishing her private information from her private documents, her private information from government databases and her private information from court documents Defendant Carlson and Defendant Moon have deprived the Plaintiff the privileges of her Fourth Amendment rights (¶Cause of Action I)

## J. Injury in Fact

21. Plaintiff alleged she suffered an injury in fact (¶Cause of Action I, II, & III)

## K. Rulings for Review

Plaintiff appeals the ruling that she has not stated a constitutional invasion of privacy claim based on the alleged violation of her Fourth Amendment rights by Defendant Carlson and Defendant Moon.

Issues for the Court to consider

Plaintiff would like this Honorable Court to consider the following:

General

1. Citing only *Katz v United States*, the court dismissed all Fourth Amendment claims against Defendant Carlson and Defendant Moon

2. *Katz v. United States* was decided in 1967. This court decision was issued before the emergence and use of internet, social media and websites created by private citizens and the general public.

3. Private documents on the Internet can be seized by anyone once they have been published on the Internet because they are in *plain view*

4. Although the Fourth Amendment does protect primarily against "governmental intrusion" The Fourth Amendment case law extends protection to private citizens from other private citizens who are deemed "state actors".

5. In *Katz v United States* it was also stated by the Court that "The Fourth Amendment protects people, not places". The Court emphasized the goal of the Fourth Amendment being a focus on the protecting the individual.

6. The Court also stated in *Katz v. United States* that the Fourth Amendment protected private information even if it was accessible in a public area. The Court said that for each private American citizen: "…what he seeks to preserve in private, even in an *area* accessible to the public, *may be constitutionally protected*" (emphasis added)

7. This case requires the court to decide to what extent is the Internet an "area"

8. Private information within documents ("papers") that are (a) privately maintained by an individual (b) or are stored in government databases, (c) or are papers held in courts not of record (d) or are court orders or (d) are protective orders can be seized by any United States government agency or any person working on behalf of the United States when published on the Internet in plain view for an international audience[18] and therefore constitutes a threat of injury.

---

[18] International audience includes by extension a national audience in the Untied States

The Privacy Act of 1974

9. Due to the use of the word "privacy"[19] in the Complaint[20], The Privacy Act is relevant in deciding this case

10. The Privacy Act came in part from privacy protections inherently existent and extracted from the Fourth Amendment

11. The Privacy Act came in part from privacy protections inherently existent and extracted from the Fourth Amendment because of the Fourth Amendment's focus on "papers"

12. The Privacy Act was established in 1974. This Act was issued before the emergence and use of internet, social media and websites created by private citizens and the general public.

13. While the Privacy Act allows a court of jurisdiction to release a court order without a party's consent, this exception was created in 1974, before the widespread use of Internet by private citizens and the general public. The Privacy Act does not take into account the disclosure of court orders beyond the scope of relevant parties who would request it from a court. When this law was created there was no way for a third party requesting the order to display the document for a national and international audience on the Internet. Releasing court documents is a function normally left to the state. National and international newspaper and magazine publications of court orders were not envisioned as a problem when the Privacy Act was made. Printing presses were owned by a few major companies who were bound to ethical journalism laws. At the time this law was created a third party requesting a copy of a court order from a Clerk had to show good cause at the Clerk's office for why s/he needed a copy of the order, especially in courts not of record.

14. The Privacy Act does not distinguish between courts not of record and public courts

15. The Privacy Act gave birth to the "no disclosure without consent" doctrine

16. This case requires this court to determine if The Privacy Act exception allowing court orders to be disclosed without consent makes private citizens who publish

---

[19] Complaint at d(viii) and h(xx)
[20] The *pro-se* Complaint instructions require that a *pro-se* litigant not site case law or statutes up front

them on the Internet a "state actor" because they are doing functions normally left to the state.

17. This case requires this court to determine if The Privacy Act's exception allowing court orders to be disclosed without consent includes disclosure to a national audience in the United States or an international audience on the Internet.

## State Actors

18. This case requires for this court to determine *generally* whether or not private citizens who are publishing private information (a) from private papers (b) or stored in government databases, (b) in courts not of record (c) on court orders and (d) on protective orders are "state actors" when they publish information on the internet for an international audience[21] because they are conducting functions normally left to the state.

19. This case requires this court to determine if Internet publication by a "state actor" who is (a) performing functions normally left to the state or (b) threatens an injury - specifically the interception of their private information by another government agency without consent - *violates the Plaintiff's Fourth Amendment rights*

20. This case requires this court to determine if (a) taking private information from private papers, court documents and private information in government databases which are published on one website or (b) transmitted orally and then (c) published on another website deems the *first* speaker or *first* website publisher a "state actor" for doing functions normally left to the state (distribution of private information from documents)

21. This case requires this court to determine if (a) taking private information from private papers, court documents and private information in government databases which are published on one website or (b) is transmitted orally and then (c) published on another website deems the *secondary* website publisher a "state actor" for doing functions normally left to the state (distribution of private information from documents)

---

[21] International audience includes by extension a national audience in the United States of America

Disclosure without consent

22. Private information within documents ("papers") that are (a) stored in government databases, (b) or are papers held in courts not of record (c) or are court orders or (d) are protective orders are all held by government agencies. When their contents are published on the Internet in plain view for an international audience[22] the publication constitutes a "disclosure without consent" which violates the Privacy Act.

23. This case requires this court to determine if (a) taking private information from private papers, court documents and private information in government databases which are then used to be published on one website or (b) transmitted orally and then (c) published on another person's website deems the original speaker or original publisher a "state actor" who is breaching the "disclosure without consent" rule (distribution of information from private documents without consent)

24. This case requires the court to determine if private information[23] nationally published in the United States <u>on the Internet</u> by private citizens from (1) private papers or (a) information stored in government databases, (b) information from courts not of record (c) information on court orders or (d) information on protective orders is "<u>disclosure without consent</u>"

Other

25. There is an implied right of action within the Fourth Amendment and The Privacy Act of 1974

26. A person has no remedy from the Privacy Act, Cyberstalking statutes or the Second Restatement of Torts when they are injured by the publication of private papers, private court documents and private information stored in government databases and Federal agents do not act on their behalf to protect them.

---

[22] International audience includes by extension a national audience in the Untied States
[23] Legal names, spouse's legal names, legal names of minor children, birthdates, birthdates of minor children, social security numbers and residential addresses

Summary of argument

If The Privacy Act, which extends in part from the Fourth Amendment, enforces or allows, or has not created a provision to prohibit (i) the publication of private information (ii) from (1) private papers (2) protective orders (3) information stored in government databases (4) court orders and (5) documents of courts not of record (ii) on the Internet (iii) by private citizens (iv) for a national audience in the United States, or an international audience around the world, (v) which can be intercepted by any government agency or any American citizen working on behalf of the government, then the private citizens (v) are "state actors" who have violated the Fourth Amendment (vi) being given their authority by the congressional branch of the government to do so and (vii) by taking over functions normally left to the state.

Argument:

Plaintiff asserts that the Privacy Act and the Fourth Amendment can be read independently but also in conjunction with each other. The Fourth Amendment, which long proceeded the Privacy Act, was written with the protection of private individuals' "papers" in mind. Because the authorities of old Europe had a habit of seizing the common person's private papers, it was necessary to extend this protection to the middle class. At that time, protection was extended to white land owning males in the continental United States of America. Of course, since that time, this protection has been extended to women and all races in the United States.

Over the years, the Supreme Court has recognized the inherent privacy protections built into the Constitution and Bill of Rights. These have come mostly from the First, Fourth, Ninth and Fourteenth Amendments. The Fourth Amendment's special emphasis on "papers" gave rise, in part, to the Privacy Act. The Privacy Act was embedded into the Freedom of Information Act (FOIA), which came out in part out of the Nixon era. During that time the American people became more suspicious of government and wanted a way to remedy the hidden conspiracies deep within their representative republic.

The Privacy Act was created with a large focus on individual privacy. With the widespread disclosure of documents required by the FOIA, there needed to be a balance of respect for the common person. Reaching back in time to the Fourth Amendment, the Privacy Act had a number of protections for the papers of the common person. Imbued within The Privacy Act was a "no disclosure without consent" provision. Twelve exceptions were created, one of them being for the judicial branch. Exception number seven (7) stated that court orders from a court of jurisdiction could be released without consent.

The Fourth Amendment was written in 1791. The Privacy Act was passed in 1974. At those times, the American[24] people did not yet have widespread access to the Internet. Only a few major companies and the mainstream media could publish national and international publications. They were bound by laws to follow ethical standards of journalism.

---

[24] United States of America

Since those times, the American[25] people have had the privilege of hand held phones and computers that grant them access to the internet. Anyone can publish information online and anyone can be a "journalist" in their own right. With the rise of the widespread use of the internet, the question now remains how the Fourth Amendment and The Privacy Act are to be interpreted by courts in the present day. "It would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology" (*Kyllo v United States*).

In 1967 the Supreme Court said: "…what he seeks to preserve in private, even in an *area* accessible to the public, *may be constitutionally protected*" (*Katz v United States*) (emphasis added). The Internet is a new "area" that must be brought into consideration of the interpretation of *Katz v United States*, The Fourth Amendment and The Privacy Act. "New" because the manner in which the common person uses and has access to the Internet as changed since 1967. It has changed since 1974. Indeed, one's Fourth Amendment rights and rights under the Privacy Act to keep their legal name, their spouse's/(-s') legal name(s), children's names, their birthdate(s), their social security numbers and their place(s) of residence off of the Internet *may be constitutionally protected* from state actors.

At one time, it was thought that unless a government penetrated a physical place, there was no Fourth Amendment violation. "It is true that the absence of such penetration was at one time thought to foreclose further Fourth Amendment inquiry…for that Amendment was thought to limit only searches and seizures of tangible property" (*Katz v United States*). However, "…although a closely divided Court supposed in *Olmstead* that surveillance without trespass and without the seizure of any material object fell outside the ambit of the Constitution, we have since *departed* from the narrow view on which that decision rested" (*Katz v United States*) (emphasis added). In *Katz v United States* the Court stated that "…once it is recognized that the Fourth Amendment protects people – and not simply "areas" – against unreasonable searches and seizures, it becomes clear that the reach of the Amendment cannot turn upon *the presence or absence of a physical intrusion into any given enclosure*" (emphasis added). Although there is no physical

---

[25] Id

intrusion into websites which publish private information seen on the internet, it is an intrusion nonetheless.

There also remains a need for interpretation of *Horton* in relation to *Ciraolo* in context of the Internet. On the one hand, the Court has ruled in *Horton* that information in "plain view" is fair game to be seized. On the other hand, the Court has also ruled in *Ciraolo* that citizens are protected when they take measures to protect themselves from threats that they can shield themselves from. In a world where anyone can use private information any way they want, it is impossible for people to protect themselves absolutely on the internet even if the information is in "plain view". Where a person takes precautions to maintain his privacy, it is constitutionally protected (*Rawlings v Kentucky, 448 US 98, 105*). Therefore, if someone does not publish their own private information on the internet, it should be constitutionally protected. Plaintiff Scott fully alleged in her Complaint that she took measures not to publish her private information on the internet.

Without judicial enforcement of an implied right of private action in this type of case, a person is left without a remedy, especially when Federal agents do not protect citizens from Cyberstalking and online bullying. The Privacy Act fails to give private citizens a remedy when injured by the international publication of their private information on the Internet. Cyberstalking statutes fail to give private citizens a remedy when injured by the international publication of their private information on the Internet. The Second Restatement of Torts fails to give private citizens a remedy when injured by the international publication of their private information on the Internet. *The statutory purpose of the Fourth Amendment and The Privacy Act would be fulfilled by judicial enforcement of punishing people as state actors when they publicly disclose private information from private papers, government databases, court orders and court documents on the Internet.*

In *Blum v Yaretsky* the Court stated: "...our precedents indicate that a state normally can be held responsible for a private decision only when it has exercised coercive power *or* has provided such *significant encouragement, either overt or covert,* that the choice must in law be deemed to be that of the state" (emphasis added). The current laws and lack of remedies are covertly allowing people to be state actors when

they publish private information[26] on the Internet with no consequence. The 4th district has recognized this "nexus" argument in *DeBauche v Trani*. In *Blum v Yaretsky*, the Court also stated: "...the required nexus may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the state". Persons who distribute to the public the contents of private information in government databases, protective orders, and court documents to third parties are taking over actions that are the prerogative of the state. The 4th district has also enforced the "public function" doctrine in *Goldstein v Chestnut Ridge Fire Co.*

By extension, if Defendant Carlson and Defendant Moon have internationally published information from Plaintiff Scott's private papers, which was only otherwise obtainable in government databases, in courts not of record, through court documents and from her own private documents, then they have, as state actors, violated Plaintiff's Scott's Fourth Amendment rights, which gave rise to her rights under The Privacy Act. The have cause Plaintiff Scott more than one injury. To give her the relief requested not only vindicates her own private rights but also public interests. It is in the best interest of the people of the United States for the judicial branch to prevent the internet publication of private information and private papers.

If the congressional branch of the United States has enforced or allowed, or failed to prohibit the common person to publish, on the Internet, for an international audience, information from (1) private papers (2) from American[27] government databases (3) from court orders (4) from protective orders (5) or from courts not of record, that can be viewed or printed out and therefore, *seized* by anyone, then they have, by their authority, allowed private citizens and other persons generally to be "state actors". If they have not prohibited the internet *seizure* and internet publication of private information from (1) private papers (2) from American[28] government databases (3) from court orders (4) from protective orders (5) or from courts not of record, then they have, by their authority, covertly allowed private citizens and other persons generally to be "state actors". In these scenarios, the persons would be considered "state actors" because they are covertly being given permission to take over functions normally left to the state. These state actors are being given significant encouragement to do so by a lack of

---

[26] from private papers, court orders, court documents and government databases
[27] United States of America
[28] Id

consequence in the law. "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government, and as a result, be subject to constitutional constraints" (*Edmonson v Leesville Concrete Co, Inc., 500 US 614 (1991)*).

<u>Relief sought</u>

Plaintiff seeks the following relief, as listed in her complaint:

1. Injunctive relief for the court to order Defendant Carlson and Defendant Moon to cease and desist from publishing on the Internet the following private information from government databases, protective orders and court documents which concern the Plaintiff:
   a. her legal name
   b. the legal names of children she has birthed or has custody of
   c. the former or current legal name(s) of her past and present legal spouse
   d. her children's birth dates on documents which list the Plaintiff as Petitioner or Respondent
   e. her birth date
   f. Her residential address
   g. Her county of residence
   h. Her city of residence
   i. her social security number, in any form or fashion
   j. any information that is only obtainable by a search of government databases which concerns her household
   k. any information that is only obtainable by private records which concerns her household
2. Injunctive relief for the court to order Defendant Carlson and Defendant Moon to immediately remove any information off the Internet listed in bullet one (1) above
3. Special damages in the amount of $36,000 from both Defendants for security cameras to protect her home for a period of up to ten (10) years
4. General and punitive damages[29] from Defendant Carlson for violation of her Fourth Amendment rights
5. General and punitive damages[30] from Defendant Moon for violations of her Fourth Amendment rights

---

[29] Amount is listed in the original Complaint   [30] Id

*Appellant Brief Scott v Carlson et al*
Case No. 19-1011

APPENDIX

(A) the relevant docket entries in the proceeding below;

    1.  Opinion issued by the Honorable James P. Jones December 11, 2018
    2.  Order issued by the Honorable James P. Jones December 11, 2018

(B) the relevant portions of the pleadings, charge, findings, or opinion;

    1.  Relevant portions of Complaint pleading (in conjunction with cross references/other paragraphs):

    a.  (¶d and ¶g; "Cause of Action I)
    b.  (¶b(ii))
    c.  (¶b(iii), c(vi) & c(vii))
    d.  (¶d(viii))
    e.  (¶g(xiv), footnote 3)
    f.  (¶g(xiv), footnote 3)
    g.  (¶f)
    h.  (¶g(xiii) and "Cause of Action I")
    i.  ((¶g(xiii))
    j.  (¶g(xiii) and g(xv) and g(xvi))
    k.  (¶i)
    l.  (¶c(vi) and (d)(viii))
    m.  (¶g(xiv), footnote 3)
    n.  (¶g(xv) and g(xi))
    o.  (¶c(vi))
    p.  (¶g(xvi))
    q.  (¶Cause of Action I)
    r.  (¶d(xiii) and "Cause of Action I")
    s.  (¶h(xx) and "Cause of Action I")
    t.  (¶Cause of Action I)
    u.  (¶Cause of Action II)
    v.  (¶Cause of Action III)

(C) the judgment, order, or decision in question

    1.  2:18CV47

(D) other parts of the record to which the parties wish to direct the court's attention.

    n/a

RESPECTFULLY SUBMITTED,

Melinda Scott, *pro-se*

PO BOX 1133-2014PMB87

Richmond, Virginia

540.692.2342

mscottw@gmu.edu

**Certificate of Service**

I, Melinda Scott, have mailed ONE (1) copy of this Brief to Defendants: Andrew Carlson, 150 Willow Creek Ave, Schnectady, NY 12304, and Joshua Moon, 3750 Don Janeal Rd, Pensacola, FL 32526 on this ___15th___ day of ___January___, 2018.

Respectfully submitted,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87
Richmond, Virginia
540.692.2342
mscottw@gmu.edu

